**THOMAS L. NUNN, JR.,**

    Plaintiff,

vs.

**DUKE ENERGY ACTIVE HEALTH & WELFARE BENEFIT (FINANCED) PLANS, and UNITED HEALTHCARE SERVICES, INC.,**

    Defendants.

## COMPLAINT

1. This is an action arising under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §1001 *et seq.* ("ERISA"), to recover benefits due under an employee welfare benefit plan and to recover costs, attorneys' fees, and interest as provided by ERISA.

## PARTIES

2. Plaintiff, Thomas L. Nunn, Jr., is a citizen and resident of Pineville, Mecklenburg County, North Carolina.

3. Defendant, Duke Energy Active Health & Welfare Benefit (Financed) Plans, is a self-funded "employee welfare benefit plan" organized and existing pursuant to 29 U.S.C. § 1002(1), and includes the Duke Energy Active Medical Plan, which made medical benefits available for eligible employees such as Plaintiff (hereafter, the Duke Energy Active Health & Welfare Benefit (Financed) Plans and the Duke Energy Active Medical Plan will be referred to collectively as the "Plan"). The Plan was created by Duke Energy Corporation ("Duke Energy")

for the benefit of its employees. It is subject to being sued as a separate entity pursuant to 29 U.S.C. §1132(d)(1).

4. Defendant, United HealthCare Services, Inc. ("UHC"), is a corporation organized under the laws of the State of Minnesota and is authorized to do business in the State of North Carolina, and does substantial business in Mecklenburg County.

5. Upon information and belief, the Plan has delegated to UHC the responsibility for administering the Plan, including the functions of reviewing claims and making claim coverage decisions such as whether to grant or deny benefits.

6. UHC has a fiduciary obligation to beneficiaries under the Plan, including the Plaintiff in this action, to administer the Plan fairly and impartially, for the exclusive benefit of participants and beneficiaries such as Plaintiff, and to make benefit determinations according to the terms of the Plan.

7. Upon information and belief, the actions of UHC, as alleged in this Complaint, were taken within the scope of its agency relationship with the Plan, so that its acts and omissions are imputed to the Plan.

8. Duke Energy is the Plan Sponsor.

9. The Plan Administrator is the Duke Energy Benefits Committee.

10. Upon information and belief, Bank of New York Mellon is the Plan's Trustee.

## JURISDICTION AND VENUE

11. This Court has jurisdiction to hear this claim pursuant to 28 U.S.C. § 1331, in that the claim arises under the laws of the United States. Specifically, Plaintiff brings this action to enforce his rights under ERISA, as allowed by 29 U.S.C. § 1132.

12. Venue in the Western District of North Carolina is appropriate by virtue of

Plaintiff's residence in this district and Defendants' doing business in this district.

## FACTUAL ALLEGATIONS

**A. Background.**

13. During the relevant time period alleged herein, Plaintiff Thomas Nunn was an employee of Duke Energy in Charlotte, North Carolina.

14. As a benefit of Plaintiff's employment with Duke Energy, Plaintiff was given access to group health insurance coverage. Plaintiff's Plan provided health benefits, including, but not limited to, coverage for both diagnostic and surgical procedures.

15. At all times relevant to this action, Plaintiff has been a covered participant under the Plan by virtue of Plaintiff's employment with Duke Energy.

16. In or around July 2014, Plaintiff was diagnosed with azoospermia, which is a condition that occurs because of reproductive tract obstruction (obstructive azoospermia) or inadequate production of spermatozoa (non-obstructive azoospermia).

17. Signs and symptoms of azoospermia include, but are not limited to, increased body fat, body hair, and breast tissue, penile discharge, the presence of a mass or swelling on the scrotum, pain in the groin area, fever, chills, and weakness.

18. Azoospermia often serves as a symptom of another condition. Indeed, obstructive azoospermia can signal the presence of genetic conditions, infections of the testicles, prostate, or reproductive tract, and trauma, such as injury or surgery to the spine, pelvis, lower abdomen, or male sex organs. Non-obstructive azoospermia can signal the presence of testicular cancer, genetic conditions, and various disorders of the testicles.

19. While obstructive azoospermia is treatable, non-obstructive azoospermia is generally not correctable.

20.     Therefore, the type of azoospermia must be determined before treatment, if available, can be rendered.

21.     The principal diagnostic tool used to provide a definitive diagnosis between obstructive azoospermia and non-obstructive azoospermia is a diagnostic testicular biopsy.

22.     Plaintiff's urologist determined that a diagnostic testicular biopsy was necessary to determine the type of Plaintiff's azoospermia, and thus necessary to determine if Plaintiff's azoospermia could be treated.

23.     Prior to undergoing the diagnostic testicular biopsy, Plaintiff called UHC and inquired as to whether the diagnostic testicular biopsy and associated care would be covered under the Plan.

24.     UHC issued prior approval for coverage of Plaintiff's diagnostic testicular biopsy prior to the procedure taking place.

25.     On October 22, 2015, Plaintiff underwent a diagnostic testicular biopsy.

**B.     UHC Approves Coverage.**

26.     Following the procedure, UHC provided Plaintiff with an Explanation of Benefits ("EOB"), dated November 16, 2015, notifying Plaintiff that it approved coverage in full for Plaintiff's testicular biopsy and associated care received on October 22, 2015.

27.     The November 16, 2015 EOB stated that Plaintiff was not responsible for any portion of the amount billed by Plaintiff's medical provider, Carolinas Medical Center, for the testicular biopsy and associated care received on October 22, 2015.

28.     The November 16, 2015 EOB also included the following language:

ACCORDING TO THE NETWORK PHYSICAN, FACILITY, OR OTHER HEALTHCARE PROFESSIONAL CONTRACT, ADVANCE NOTIFICATION WAS REQUIRED BUT WAS NOT RECEIVED. THEREFORE, THE APPLICABLE ADMINISTRATIVE REIMBURSEMENT REDUCTION HAS

4

Case 3:18-cv-00541-RJC-DSC   Document 1   Filed 10/05/18   Page 4 of 20

BEEN APPLIED AND DEDUCTED FROM THE PROVIDER'S PAYMENT. ACCORDING TO THE NETWORK CONTRACT, THE PATIENT MAY NOT BE BILLED FOR THE AMOUNT OF THE ADMINISTRATIVE REIMBURSEMENT REDUCTION.

29. In or around April 2016, Carolinas Medical Center notified Plaintiff that UHC had denied coverage for Plaintiff's testicular biopsy and associated care received on October 22, 2015, directly contrary to UHC's November 16, 2015 EOB.

30. Thereafter, Plaintiff learned that, by letter dated March 25, 2016, UHC informed Carolinas Medical Center that "no payment is due" for the testicular biopsy and associated care because "notification was not completed." The letter provided no further explanation regarding UHC's retroactive denial of coverage.

31. In the following months, Carolinas Medical Center began demanding payment from Plaintiff for the testicular biopsy and associated care received on October 22, 2015.

32. By electronic correspondence dated July 1, 2016, Plaintiff notified UHC that he received a demand for payment from Carolinas Medical Center for the testicular biopsy and associated care received on October 22, 2015, contrary to UHC's November 16, 2015 EOB.

33. In response to Plaintiff's July 1, 2016 correspondence, a UHC representative assured Plaintiff via electronic correspondence that "Carolinas Medical Center participates in [Plaintiff's] network. As such, you are not responsible to pay the billed amount." The UHC representative additionally wrote:

> Payment for this service was denied because according to the facilities contract with UHC Healthcare, advanced notification was required but not received. Therefore reimbursement reduction has been applied and deducted from the provider's payment. According to the network contract you the patient may not be billed for the denied amount. We will send a letter to Carolinas Medical Center to clarify that billing you for these denied charges is not allowed.

5

34. By electronic correspondence dated July 29, 2016, Plaintiff again notified UHC that he continued to receive demands for payment from Carolinas Medical Center for the testicular biopsy and associated care received on October 22, 2015, contrary to UHC's November 16, 2015 EOB.

35. In response to Plaintiff's July 29, 2016 correspondence, a UHC representative stated via electronic correspondence, "Please be aware the balance bill letter was issued to the provider's office on July 7, 2016. We must allow up to 30 days from July 7, 2016 for the provider to update their records per our contract agreement before we can escalate this issue further."

36. In the following months, Carolinas Medical Center continued demanding payment from Plaintiff for the testicular biopsy and associated care received on October 22, 2015, which adversely affected Plaintiff's credit and eventually resulted in Carolinas Medical Center suing Plaintiff in North Carolina state court.

### C. UHC Reverses Course and Retroactively Denies Coverage.

37. More than fourteen months following Plaintiff's procedure, Plaintiff received an EOB dated February 1, 2017 from UHC, stating that coverage was retroactively denied for Plaintiff's testicular biopsy and associated care received on October 22, 2015.

38. The February 1, 2017 EOB was the first time in which UHC notified Plaintiff of its denial of coverage for Plaintiff's testicular biopsy and associated care. Indeed, in all of Plaintiff's prior communications with UHC, Plaintiff was explicitly told that the charges were fully covered and UHC's delay in issuing payment was due to an administrative error.

39. Also for the first time, UHC provided the following basis for denial in its February 1, 2017 EOB: "According to your plan, charges for infertility, or certain infertility

services are not covered."

40. Additionally, the February 1, 2017 EOB notified Plaintiff of his right to request copies of information relevant to his claim from UHC and provided instructions for requesting such documents from UHC.

41. The Plan provides that adverse benefit decisions on claims must be made within a reasonable period of time, but no later than 30 days after receipt of the claim. The 30 day period can be extended once for an additional 15 days for special circumstances.

42. The Department of Labor regulation established to protect procedural fairness in ERISA claims such as Plaintiff's was enabled under Section 409 of ERISA, and is codified at 29 C.F.R. § 2560.503-1 (hereinafter, the "Regulation").

43. The Regulation requires that a plan administrator provide a claimant with the plan's adverse benefit determination within a reasonable period of time, but not later than 30 days after receipt of the claim. 29 C.F.R. § 2560.503-1(f)(2)(iii).

44. The Regulation provides that the 30 day period can be extended once for an additional 15 days for special circumstances, provided that the plan administrator both determines that such an extension is necessary due to matters beyond the control of the plan and notifies the claimant, prior to the expiration of the initial 30-day period, of the circumstances requiring the extension of time and the date by which the plan expects to render a decision. 29 C.F.R. § 2560.503-1(f)(2)(iii).

45. Plaintiff received the February 1, 2017 EOB more than 450 days after his procedure, well beyond the 30 day period allowed for under the Regulation and Plan.

**D. Plaintiff's First Appeal and UHC's Failure to Produce Documents.**

46. By letter dated June 22, 2017, Plaintiff informed Defendant UHC of his intent to

7
Case 3:18-cv-00541-RJC-DSC   Document 1   Filed 10/05/18   Page 7 of 20

appeal the denial of coverage for his testicular biopsy and associated care received on October 22, 2015.

47. Also in the June 22, 2017 letter, Plaintiff formally requested from UHC copies of all documents related to his claim, as instructed by the February 1, 2017 EOB, as well as copies of all Plan documents required by ERISA in writing, including copies of:

    a.    the entire "Administrative Record" connected with Plaintiff's benefit claim, including any medical records, copies of independent medical reviews, the group insurance policy, the Summary Plan Description, claims processing notes and other documents relied upon by UHC and any other claims fiduciaries in denying coverage; and

    b.    any internal administrative guidelines, operating procedures, policies, definitions, risk assessment, any claims management, claims processing policies or guidelines, or other documents used or references in making this determination.

48. In pertinent part, the Regulation provides the following regarding appeals of adverse benefit determinations:

> Every employee benefit plan shall establish and maintain a procedure by which a claimant shall have a reasonable opportunity to appeal an adverse benefit determination to an appropriate named fiduciary of the plan, and under which there will be a full and fair review of the claim and the adverse benefit determination.

29 C.F.R. §2560.503-1(h)(1).

49. The Regulation further provides that a review will not be full and fair unless the plan participant is provided with "reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits." 29 C.F.R. §2560.503-1(h)(2)(iii).

50. UHC "responded" to Plaintiff's request for documents by letter dated June 27,

2017 and received by Plaintiff on or about June 30, 2017. This letter inexplicably suggested that UHC considered Plaintiff's document request to be an administrative appeal rather than a document request.

51. On July 6, 2017, the office of Plaintiff's counsel contacted UHC, reiterating that Plaintiff's June 22, 2017 letter served to inform UHC of Plaintiff's intent to timely appeal UHC's denial of coverage and to request documents connected to Plaintiff's benefit claim, and was not an administrative appeal. The UHC representative verbally confirmed that she would mail the requested documents to Plaintiff's counsel.

52. Defendant UHC failed to provide the documents connected to Plaintiff's benefit claim by July 22, 2017 (thirty days after the date of Plaintiff's June 22, 2017 request), as is required under the regulations.

53. Having still received nothing from UHC, on or about July 25, 2017, the office of Plaintiff's counsel again contacted UHC about the status of Plaintiff's June 22, 2017 document request. The UHC representative verbally confirmed that the details of the July 6, 2017 conversation were documented in UHC's internal records, but stated that no action had been taken with regard to Plaintiff's claim since that time and thus the documents responsive to Plaintiff's request were never mailed.

54. By letter dated July 28, 2017, Plaintiff appealed UHC's denial of coverage for his testicular biopsy and associated care received on October 22, 2015, without the benefit of receiving and reviewing any of the documents requested by Plaintiff and required by ERISA and its regulations.

55. In Plaintiff's July 28, 2017 letter, Plaintiff informed UHC that its failure to provide his claim file in response to his request for copies of documents pertinent to the denial of

9

coverage deprived him of a reasonable opportunity for a full and fair review of his claim in violation of ERISA.

56. Despite UHC's statement on July 25, 2017, which indicated that no action had been taken in regards to Plaintiff's June 22, 2017 request for documents, UHC "responded" to Plaintiff's request for documents by letter dated July 21, 2017, wherein UHC asserted for the first time that Plaintiff's request for documents was inadequate because the request did not include the provider name, date of service, and claimed billed amount. Until this point, UHC had led Plaintiff to believe that it was producing the required documents.

57. Although UHC's letter was dated July 21, 2017, the letter was apparently not mailed until a later date, as it was received by Plaintiff on or about July 31, 2017, the date in which Plaintiff's appeal was due and approximately 40 days following Plaintiff's written request for documents.

58. By letter dated August 7, 2017, UHC upheld its denial of coverage for Plaintiff's testicular biopsy and associated care received on October 22, 2015.

59. Also in the August 7, 2017 letter, UHC informed Plaintiff of his right to receive documents related to his claim. Specifically, the letter read:

> You have the right to receive, upon request and free of charge, reasonable access to and copies of all documents, records, and other information relevant to your appeal, as well as copies of any internal rule, guideline or protocol that we relied on to make this payment decision. You may also have the right to receive, upon request and free of charge, an explanation of the scientific or clinical judgment that we have relied upon in making this benefit decision as well as the diagnosis or treatment codes, and their corresponding meanings. To request copies, submit a written request, separate from an appeal request, to: UHC Healthcare – Appeal Document Request, P.O. Box 30432, Salt Lake City, UT 84130-0432. We will fulfill your request within thirty (30) calendar days of receipt.

### E. Plaintiff's Second Appeal and UHC's Continued Failure to Produce Documents.

60. The Plan required that Plaintiff pursue two appeal levels to exhaust administrative remedies.

61. By letter dated August 14, 2017, Plaintiff informed Defendant UHC of his intent to file a request for a second level review of the denial of coverage for his testicular biopsy and associated care received on October 22, 2015.

62. Also in the August 14, 2017 letter, Plaintiff again formally requested copies of all documents related to his claim, as instructed by UHC's August 7, 2017 letter, as well as copies of all Plan documents required by ERISA.

63. Plaintiff's August 14, 2017 document request included the provider name, date of service, and claimed billed amount, despite the fact that these details were not required pursuant to the instructions provided by UHC in its August 7, 2017 letter.

64. By letter dated August 15, 2017 and received by Plaintiff on or about August 23, 2017, UHC "responded" to Plaintiff's second request for documents, wherein UHC incorrectly stated that Plaintiff's second request for documents was inadequate because the request did not include the provider name, date of service, and claimed billed amount.

65. As the requested details were provided in Plaintiff's August 14, 2017 request, Plaintiff responded to UHC by letter dated August 23, 2017, wherein Plaintiff again expressed concern that UHC was engaging in stall tactics in order to again foreclose Plaintiff of an opportunity to file a meaningful appeal.

66. Also in the August 23, 2017 letter, Plaintiff, for the third time, formally requested copies of all documents related to his claim, as instructed by UHC's August 7, 2017 letter, as well as copies of all Plan documents required by ERISA.

67. UHC failed to produce documents or otherwise respond to Plaintiff's June 22, 2017, August 14, 2017, and August 23, 2017 document requests by October 6, 2017, the deadline for Plaintiff to request a second level review of the denial of coverage for his testicular biopsy and associated care received on October 22, 2015.

68. By letter dated October 6, 2017, Plaintiff timely appealed the denial of coverage for his testicular biopsy and associated care received on October 22, 2015 for a second time, as required by the Plan, and again without the benefit of receiving and reviewing any of the documents requested by Plaintiff and required by ERISA and its regulations.

69. In Plaintiff's October 6, 2017 letter, Plaintiff once again informed UHC that its failure to provide his claim file in response to his numerous requests for copies of documents pertinent to the denial of coverage deprived him of a reasonable opportunity for a full and fair review of his claim in violation of ERISA.

70. By letter dated October 23, 2017, UHC upheld its denial of coverage for Plaintiff's testicular biopsy and associated care received on October 22, 2015.

71. UHC's October 23, 2017 denial constituted a final internal adverse benefit determination under the terms of the Plan.

72. As of the filing of this Complaint, Defendants have still failed to produce any of the documents requested in Plaintiff's June 22, 2017, August 14, 2017, and August 23, 2017 document request letters.

73. Plaintiff has now exhausted his administrative remedies, and his claim is ripe for judicial review pursuant to 29 U.S.C. § 1132.

# FIRST CLAIM FOR RELIEF:
# WRONGFUL DENIAL OF BENEFITS
# UNDER ERISA, 29 U.S.C. § 1132

74. Plaintiff reincorporates the preceding paragraphs of the Complaint as if fully restated.

75. Defendants have wrongfully denied benefits to Plaintiff in violation of the Plan provisions and ERISA for the following reasons:

    a. Plaintiff has been wrongfully denied healthcare benefits;

    b. Defendants failed to accord proper weight to the evidence in the administrative record;

    c. Defendants' adverse benefit determination was rendered more than 400 days after the expiration of the deadline provided for under both the Plan and Regulation;

    d. The Plan documents were unclear and deficient;

    e. Defendants' interpretations of the definitions contained in the Plan, including but not limited to: "Covered Health Services," "Sickness," "Illness," "Diagnostics," "Surgery," "Medically Necessary," and several Policy "Exclusions" are contrary to and exceed the permissible scope of the provisions of ERISA, and are unreasonable;

    f. Plaintiff's claim does meet the relevant Plan standards and definitions for coverage;

    g. Defendants have violated their contractual obligation to furnish healthcare benefits to Plaintiff; and

    h. Plaintiff has been treated differently from similarly situated participants and beneficiaries.

76. As a result of the conduct of Defendants, Plaintiff has suffered significant damages, including medical expenses, attorney fees, and costs.

## SECOND CLAIM FOR RELIEF: WRONGFUL DENIAL OF BENEFITS UNDER ERISA FOR FAILING TO AFFORD PLAINTIFF HIS ADMINISTRATIVE DUE PROCESS RIGHTS

77. Plaintiff reincorporates the preceding paragraphs of the Complaint as if fully restated.

78. Defendants are required under ERISA and applicable federal regulations to provide Plaintiff with a fair and impartial administrative review process.

79. Defendants are required under ERISA and applicable federal regulations to disclose material information to plan participants like Plaintiff and to communicate material facts affecting the interests of plan participants.

80. Defendants are prohibited under ERISA and applicable federal regulations from misleading plan participants and from misinforming plan participants through material misrepresentations and incomplete, inconsistent or contradictory disclosures.

81. Defendants failed to afford Plaintiff with adequate due process in that they violated ERISA and its regulations by repeatedly making misrepresentations, both oral and written, to Plaintiff, and engaged in a misleading pattern of behavior related to Plaintiff's claim, including, but not limited to, Defendants' actions of preapproving Plaintiff's claim, formally approving Plaintiff's claim following the procedure, repeatedly assuring Plaintiff that his claim is covered, and then waiting more than 450 days after the procedure to reverse course and deny Plaintiff's claim.

82. Defendants are required under ERISA and applicable federal regulations to provide Plaintiff with a timely notification of an adverse benefit determination.

83. Defendants must give adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant.

84. Defendants failed to afford Plaintiff with an adequate administrative review in that they violated ERISA and its regulations in failing to provide him with a timely adverse benefit determination that set forth the specific reasons for such denial, written in a manner calculated to be understood by the participant.

85. Defendants must give Plaintiff a reasonable opportunity for a full and fair review of the decision denying the claim.

86. In the administrative appeal process, Defendants must provide an opportunity for Plaintiff to review all pertinent information considered by Defendants in denying benefits, and to challenge the denial by submitting additional information showing why he is entitled to benefits, in response to specific grounds for denial articulated by Defendants.

87. By letters dated June 22, 2017, August 14, 2017, and August 23, 2017, Plaintiff requested the entire administrative record, as well as numerous other documents that he is entitled to under ERISA, as described more fully in paragraphs 47, 62, and 66, *supra*.

88. Plaintiff was forced to formulate all of his appeals without the benefit of the documents to which he is entitled under ERISA.

89. Defendants failed to afford Plaintiff with an adequate administrative review in that they violated ERISA and its regulations in failing to provide him with all documents and records related to his claim, forcing him to formulate his appeal without them.

90. As a result of Defendants' failure to produce all relevant documents, Plaintiff's ability to adequately pursue his administrative appeal was compromised, and as a result of this

action, Defendants failed to furnish Plaintiff with a fair and impartial administrative review process.

91. Defendants failed to afford Plaintiff his basic due process guarantees required by ERISA and the regulations promulgated thereunder.

## THIRD CLAIM FOR RELIEF: FOR APPROPRIATE EQUITABLE RELIEF UNDER ERISA, 29 U.S.C. § 1132

92. Plaintiff reincorporates the preceding paragraphs of the Complaint as if fully restated.

93. Prior to undergoing the diagnostic testicular biopsy, on more than one occasion, Plaintiff called Defendant UHC and inquired as to whether or not the procedure would be covered.

94. Defendant UHC provided preauthorization of the claim prior to the date in which Plaintiff underwent the diagnostic testicular biopsy.

95. Following Plaintiff's procedure, Defendant UHC formerly notified Plaintiff via an EOB dated November 16, 2015 that it approved coverage in full for Plaintiff's testicular biopsy and associated care.

96. Thereafter, Defendant UHC delayed in issuing payment to Plaintiff's medical provider, Carolinas Medical Center.

97. As a result of Defendant UHC's delay in issuing payment to Plaintiff's medical provider, Carolinas Medical Center demanded payment from Plaintiff, which adversely affected Plaintiff's credit and eventually resulted in Carolinas Medical Center suing Plaintiff in North Carolina state court.

98. At no point during this delay did Defendant UHC ever contend that coverage was

denied due to a fertility exclusion or for any other reason.

99. Over a year passed following Plaintiff's procedure before Defendant UHC ever contended that coverage was denied.

100. By providing preauthorization for Plaintiff's procedure, and then retroactively denying coverage more than 14 months after Plaintiff underwent the authorized procedure, Defendants stripped Plaintiff of the opportunity to go to another provider for the procedure that may be more economically feasible to him as a payee without insurance, including but not limited to outside of his insurer's network or in another state, or to find other alternative options for obtaining the procedure in a manner that was cost-effective for an individual without insurance such as a reduced self-pay option.

101. Because of Defendants' lengthy delay in changing course and retroactively denying coverage, and because of the harm this causes Plaintiff, Defendants should be equitably estopped from taking such action.

102. Following its retroactive denial of coverage, Defendant UHC repeatedly refused to provide Plaintiff with any documentation explaining its abrupt change in course and with any documents related to Plaintiff's claim.

103. Defendants failed to take reasonable steps in furtherance of Plaintiff's right to accurate and complete information.

104. Defendants repeatedly made misrepresentations, both oral and written, to Plaintiff, and engaged in a misleading pattern of behavior related to Plaintiff's claim.

105. Defendants have a duty to disclose material information to plan participants, which includes a duty not to mislead and an affirmative duty to communicate material facts affecting the interests of plan participants, as well as a fiduciary obligation not to misinform plan

participants through material misrepresentations and incomplete, inconsistent or contradictory disclosures.

106. Defendants have a duty to follow Plan requirements and to adhere to the Regulation.

107. Defendants have a duty to establish and maintain reasonable claims procedures.

108. Defendants' actions in this regard amount to a breach of their fiduciary responsibilities under the Plan.

109. Allowing Defendants to deny coverage based upon these factual circumstances would be inequitable.

110. Plaintiff respectfully requests that this Court consider the matters raised herein and hold that Defendants breached their fiduciary duty as set forth above and that the Court structure an appropriate equitable remedy under ERISA 29 U.S.C. § 1132 that the Court may deem applicable given the facts.

111. Under the particular facts of this case, as an equitable remedy for Defendants' breach of fiduciary duty, the Court should hold that Defendants are bound to coverage under the doctrine of waiver, or alternatively, based upon a "make whole" remedy which would put Plaintiff back in the position he would have occupied but for the breach of fiduciary duty.

112. As an alternative equitable remedy, the Court should impose a "surcharge" on the Plan, directing that it reimburse Plaintiff for the medical bills associated with the diagnostic testicular biopsy as well as Plaintiff's expenses, including attorney fees and costs, associated with defending a medical claims collection action in state court arising from Defendants' conduct.

**WHEREFORE**, Plaintiff prays that the Court:

1. Grant Plaintiff declaratory and injunctive relief, finding that Defendants are obligated to pay benefits owed for Plaintiff's medical treatment for services performed related to Plaintiff's testicular biopsy, and that Defendants be ordered to pay the benefits owed under the terms of the Plan;

2. Declare that Defendants have failed to afford Plaintiff with his due process rights under ERISA;

3. Grant Plaintiff an equitable "make whole" remedy, which would put Plaintiff back in the position he would have occupied but for Defendants' breach of fiduciary duty pursuant to 29 U.S.C. § 1132;

4. That, as an alternative equitable "surcharge" remedy, Plaintiff be reimbursed for the medical bills associated with the testicular biopsy and his expenses, including attorney fees and costs, associated with defending a medical claims collection action in state court arising from Defendants' conduct, pursuant to 29 U.S.C. § 1132;

5. Award pre-judgment interest at a rate of at least the North Carolina state rate of 8%;

6. Enter an Order awarding Plaintiff all reasonable attorney fees, including costs and expenses incurred as a result of Defendants' wrongful denial; and

7. Enter an award for such other relief as may be just and appropriate.

This the 5th day of October, 2018.

/s/Caitlin H. Walton
CAITLIN H. WALTON
N.C. Bar No. 49246
cwalton@essexrichards.com
NORRIS A. ADAMS, II
N.C. Bar No. 32552
nadams@essexrichards.com
**ESSEX RICHARDS, P.A.**
1701 South Boulevard
Charlotte, NC 28203-4727
Ph (704) 377-4300
Fax (704) 372-1357

*Attorneys for Plaintiff*